# United States Court of Appeals
## For the First Circuit

No. 12-1679

DORPAN, S.L.,

Plaintiff, Appellee,

v.

HOTEL MELIÁ, INC.,

Defendant, Appellant,

SOL MELIÁ, S.A.; DESARROLLADORA DEL NORTE, S. EN C., S.E.,
d/b/a GRAN MELIÁ PUERTO RICO RESORT & VILLAS,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, U.S. District Judge]

Before

Torruella, Selya and Lipez,
Circuit Judges.

Jairo A. Mellado-Villarreal, with whom Roxana Aquino-Segarra, Liza M. Delgado-González, and Mellado & Mellado-Villarreal were on brief, for appellant.
Federico Calaf Legrand, with whom Carla Calaf García, Reichard & Calaf, P.S.C., Angel R. Rotger Sabat, and Maymí & Rivera-Fourquet, P.S.C. were on brief, for appellees.

August 28, 2013

**LIPEZ, Circuit Judge.** This trademark infringement case is a dispute between two hotels over the right to use the mark "Meliá" in Puerto Rico. Defendant-appellant Hotel Meliá, Inc. ("HMI") has operated the Hotel Meliá in Ponce, Puerto Rico for more than a century, but has never registered that mark with the United States Patent and Trademark Office ("USPTO"). Plaintiff-appellee Dorpan has held several registered marks using the name "Meliá" since the late 1990s.[1] In 2007, Dorpan's parent company opened a hotel called "Gran Meliá" in Coco Beach, Puerto Rico, approximately eighty miles from Ponce. At the close of discovery, the district court entered summary judgment in favor of Dorpan, concluding that, with the exception of the city of Ponce, Dorpan was entitled to exclusive use of the Meliá mark throughout Puerto Rico.

After reviewing the record, we conclude that a reasonable factfinder could conclude that the Hotel Meliá and Gran Meliá marks cannot co-exist in Puerto Rico without creating an impermissible likelihood of confusion among reasonable consumers. The district court's decision to grant summary judgment in Dorpan's favor was

---

[1] Appellee Sol Meliá, S.A. is a public Spanish company that operates numerous hotels and vacation rentals around the world. Appellees Dorpan, S.L. and Desarrolladora Del Norte, S. EN. C., S.E. are wholly owned subsidiaries of Sol Meliá. In its own words, "Dorpan's principal business is to own, keep and license to Sol Meliá, or to Sol Meliá's subsidiaries and affiliates, the trademark portfolio the Sol Meliá hotel conglomerate uses worldwide." Desarrolladora del Norte owns and operates the Gran Meliá Puerto Rico on behalf of Sol Meliá. For ease of reference, we refer to the appellees collectively as "Dorpan."

erroneous.  Thus, we vacate the district court's entry of summary judgment and remand for further proceedings consistent with this opinion.

**I.**

**A. Facts**

In reviewing the facts we draw all reasonable inferences in favor of the non-moving party, HMI.  Cabán Hernández v. Phillip Morris USA, Inc., 486 F.3d 1, 8 (1st Cir. 2007).  HMI is a family-owned corporation operating a single hotel called Hotel Meliá in Ponce, Puerto Rico.[2]  HMI has operated the Hotel Meliá at the same location at 75 Cristina Street in Ponce without interruption since at least the 1890s.  All parties agree that Hotel Meliá has a long and storied history in Ponce, having attracted over the years many famous guests, including United States President Theodore Roosevelt.  HMI has never expanded beyond this single hotel in Ponce, nor does it plan to.  Though HMI has used the Meliá mark in Ponce continuously for more than a century, HMI has never registered the Meliá mark with either the Puerto Rico Department of State or the USPTO.

Since the late 1990s, Dorpan, S.L. has held several registered trademarks using the mark "Meliá" in connection with the hotel

---

[2]  "Meliá" is a Spanish word.  It is used as a surname and translates as "a type of plant, shrub or tree that has leaves, flowers and drupe fruit."

industry in the United States.[3]  These marks have all become incontestible within the meaning of the Lanham Act.  <u>See</u> Part II.B.1, <u>infra</u>.  Dorpan's principal business is to hold these marks on behalf of Sol Meliá, a public Spanish company.  Sol Meliá owns and operates the largest hotel chain in Spain and the third largest in Europe.  It also operates several hotels in North America using the Meliá mark, including at least one in Florida.  Until 2007, however, Dorpan had never used the Meliá mark in Puerto Rico.

In 2004, Sol Meliá opened an all-inclusive resort on Coco Beach in Coco Beach, Puerto Rico called Paradisus, approximately eighty miles from the Hotel Meliá in Ponce.  This all-inclusive business model was not successful, however.  In 2007, Sol Meliá closed the Paradisus, renovated it, and re-opened it as a luxury beach resort called "Gran Meliá."

## B. Proceedings Below

In early 2007, Dorpan filed a petition with the Puerto Rico Department of State seeking to register the mark "Gran Meliá."  HMI was immediately concerned that having a hotel called Gran Meliá in Puerto Rico would inevitably lead to consumer confusion and harm its commercial interests in Hotel Meliá.  HMI filed a letter with the Puerto Rico Department of State opposing Dorpan's registration petition and expressing concerns that Dorpan's intent to use the

---

[3]  Dorpan owns registered marks for "Sol Meliá," "Meliá Vacation Club," "Me By Meliá," "Gran Meliá," "Meliá Hoteles," and "Meliá Boutique Hotels," among others.

-4-

Gran Meliá mark in Coco Beach would infringe on HMI's common law rights to exclusive use of the Meliá mark throughout Puerto Rico. In response, Dorpan withdrew its request to register, but continued to use the mark Gran Meliá in connection with its resort in Coco Beach.

When further discussions between HMI and Dorpan failed to resolve their dispute, HMI filed a complaint in late 2008 against Sol Meliá in the Superior Court of Puerto Rico, asserting that it was the senior user of the Meliá mark,[4] and that it had the sole right to use the Meliá mark in connection with hotel and restaurant services throughout Puerto Rico.[5] Shortly thereafter, Dorpan filed a complaint against HMI in the United States District Court for the District of Puerto Rico, seeking a declaration that under the Lanham Act, Dorpan had the right to use the mark Meliá throughout

---

[4] The first party to use a mark is referred to as the "senior user" and parties who begin to use the mark subsequently are referred to as "junior users." See Allard Enters., Inc. v. Advanced Programming Res., 249 F.3d 564, 572 (6th Cir. 2001).

[5] HMI also argued that the doctrines of collateral estoppel or res judicata precluded Dorpan from arguing that it had the exclusive right to use the Meliá mark in Puerto Rico. To this end, HMI offered evidence that HMI had won a trademark infringement lawsuit in the 1970s against a company called Inmobiliaria Meliá of P.R. HMI argued that Dorpan was a successor in interest to Inmobiliaria Meliá of P.R. in such a way that they were in privity with one another for preclusion purposes. This connection was the subject of heated and protracted dispute throughout the district court proceedings. The district court ultimately concluded that there was insufficient evidence to conclude that Inmobiliaria Meliá of P.R. was in privity with the Sol Meliá companies, and rejected HMI's preclusion claims. HMI does not challenge this determination on appeal.

Puerto Rico, and that to the extent that HMI had the right to use the Meliá mark, such right existed only in the city of Ponce. Almost simultaneously, Dorpan removed HMI's commonwealth court complaint to federal court, and the district court consolidated the two cases. At the close of discovery, Dorpan moved for summary judgment on its declaratory judgment claim.[6] The district court granted that motion, concluding that no reasonable jury could find a likelihood of consumer confusion between Hotel Meliá and Gran Meliá.

In its opinion, the court noted that several facts in the record supported an inference of a likelihood of confusion, such as the substantial similarity of the marks, the similarity of the services offered by the two hotels, and the similar customers each hotel sought to attract. The court also noted that HMI had put forward some evidence of actual confusion by vendors and patrons. Nevertheless, the court decided to give more weight to the fact "that neither party accuse[d] the other of "subjectively attempting to profit from the good-will earned by the other" and that the marks were both strong in different geographic areas, Hotel Meliá's in Ponce and Gran Meliá's internationally. Dorpan, S.L. v. Hotel Meliá, Inc., 851 F. Supp. 2d 398, 410-11 (D.P.R. 2012). Without

_____

[6] HMI opposed Dorpan's motion for summary judgment and filed its own motion for partial summary judgment. HMI moved for summary judgment only on its collateral estoppel claims, however, and did not seek summary judgment on its infringement claims.

further explanation, the district court concluded: "[w]ith the factors split, the court finds these two marks can co-exist within Puerto Rico without causing substantial confusion to the reasonable consumer." Id at 411.[7]

The court then turned to "defin[ing] the limits within which each mark may be used." Id. The court concluded that HMI was "frozen" into its location at the time that Dorpan's trademark was registered. Because at that time HMI operated only in Ponce and had no plans to expand, the court concluded that HMI could continue to use the Meliá mark, but only within Ponce. Dorpan was likewise barred from using the Meliá mark in Ponce, but was free to use the mark throughout the rest of Puerto Rico and the United States. Id.

HMI appeals, arguing that the district court erred in concluding that no reasonable jury could conclude that the presence of two hotels using the Meliá mark in Puerto Rico created a likelihood of consumer confusion. In particular, HMI argues that the district court was led astray when it incorrectly treated HMI as the junior user of the Meliá mark rather than the senior user. HMI also argues that this mistake led the court to consider only

---

[7] Trademark infringement suits often involve a motion for a preliminary injunction. In that posture, it is appropriate for the district court to engage in factfinding based on evidence presented at the preliminary injunction hearing. We do not have such a situation here. As we discuss, infra, this case was before the district court on a motion for summary judgment, and the relevant inquiry was whether there was a genuine issue of material fact regarding the likelihood of confusion.

-7-

evidence of "forward confusion," and to overlook the compelling evidence submitted of "reverse confusion." See Part II.C, infra. According to HMI, these errors caused the district court incorrectly to infer from the evidence that HMI was not entitled to exclusive use of the Meliá mark throughout Puerto Rico.

## II.

In resolving this appeal, we review the district court's grant of summary judgment de novo, drawing all reasonable factual inferences in the light most favorable to the non-moving party, HMI. Colt Def. LLC v. Bushmaster Firearms, Inc., 486 F.3d 701, 705 (1st Cir. 2007).

Before we begin our analysis of this case, we must provide a brief overview of the relevant law on trademark infringement. We then consider the contours of the trademark rights held by each party -- Dorpan's rights under federal law and HMI's rights under Commonwealth law. Finally, we evaluate the district court's likelihood of confusion analysis.

## A. The Relevant Law of Trademark Protection

A "'trademark' includes any word, name, symbol, or device . . . used by a person . . . to identify and distinguish his or her goods . . . from those manufactured or sold by others and to indicate the source of the goods." 15 U.S.C. § 1127.[8] A trademark

_____

[8] In this opinion, we use the terms "trademark" and "mark" to include both trademarks and service marks. "Trademarks serve to identify and distinguish goods; service marks perform the same

-8-

protects the right to distinguish the holder's goods or services from other goods or services that might be confused with the holder's. See I.P. Lund Trading ApS v. Kohler Co., 163 F.3d 27, 35 (1st Cir. 1998) (noting that "[a] primary purpose of . . . trademark protection is to protect that which identifies a product's source"). Prevention of confusion is thus the touchstone of trademark protection. Where there is no likelihood of confusion by the alleged infringer "there is no impairment of the interest that the trademark statute protects." Libman Co. v. Vining Indus., Inc., 69 F.3d 1360, 1361 (7th Cir. 1995).

The right to use a mark in commerce may arise under either federal law or state common law.[9] Gen. Healthcare Ltd. v. Qashat, 364 F.3d 332, 335 (1st Cir. 2004). In the nineteenth and early twentieth centuries, trademark law was governed primarily by state common law. See Thrifty Rent-a-Car Sys., Inc. v. Thrift Cars, Inc., 831 F.2d 1177, 1180 (1st Cir. 1987). In an attempt to

---

function for services." Bost. Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 12 n.8 (1st Cir. 2008); see also 15 U.S.C. § 1127. In the infringement context, the analysis is identical for both types of marks and the terms may thus be used interchangeably. See Tana v. Dantanna's, 611 F.3d 767, 772 n.3 (11th Cir. 2010); see also Star Fin. Servs., Inc. v. AASTAR Mortg. Corp., 89 F.3d 5, 9 (1st Cir. 1996) (noting that the same test applies for infringement in both the trademark and service mark contexts).

[9] Unlike the related fields of patent and copyright law, the Constitution does not grant Congress the express authority to establish laws governing trademarks. See U.S. Const. art. I, § 8. Thus to regulate trademarks, Congress must rely on its power to regulate interstate and foreign commerce. See Bos. Duck Tours, 531 F.3d at 11 n.7.

provide uniformity in an age where interstate commerce was rapidly becoming the norm, Congress passed the Lanham Act in 1946, which created a federal statutory framework to protect trademarks throughout the United States.  See 15 U.S.C. §§ 1051-1129.  Under the Act, users of trademarks may apply to register those marks with the USPTO.  See id. § 1051.  Such federal registration "serves as constructive notice to the public of the registrant's ownership of the mark."  In re Int'l Flavors & Fragrances Inc., 183 F.3d 1361, 1367 (Fed. Cir. 1999); see also Peaches Entm't Corp. v. Entm't Repertoire Assocs., Inc., 62 F.3d 690, 692 (5th Cir. 1995) ("The basic scheme that creates rights under the Lanham Act is a national registration system.").

The Lanham Act did not supplant the state common law of trademarks, however.  Cf. In re Spirits Int'l, N.V., 563 F.3d 1347, 1354 (Fed. Cir. 2009) (noting that "[t]he Lanham Act was designed to codify, not change, the common law in this area").  Trademark users may still gain state law rights to use a trademark either through registration with a state government or through use in that state.  In fact, Section 15 of the Lanham Act grants federally registered marks the right to exclusive use of the mark only insofar as they do not conflict with any pre-existing rights acquired under state law.  See 15 U.S.C. § 1065.

**B. The Trademark Rights Held by the Parties**

The crux of the dispute in this case is that both parties

claim to hold the exclusive right to use the Meliá mark in Puerto Rico. Dorpan claims that it has the exclusive right to use the Meliá mark in Puerto Rico under federal law.  HMI claims that it has the exclusive right to use the Meliá mark in Puerto Rico under Puerto Rico law.  We discuss the contours of the rights held by each party in turn.

**1. Dorpan's Rights Under the Lanham Act**

Dorpan argues that HMI can have no claim to exclusive use of the Meliá mark in Puerto Rico because Dorpan holds the federal registration for the Meliá mark and that registration has become "incontestible" within the meaning of the Lanham Act. Incontestibility is a status created by Section 15 of the Lanham Act, which provides that once a mark has been registered and in continuous use for five consecutive years without an adverse ruling against the holder, the registrant may file an affidavit of inconstestibility with the USPTO.  See 15 U.S.C. § 1065; see also Borinquen Biscuit Corp. v. M.V. Trading Corp. 443 F.3d 112, 117 n.3 (1st Cir. 2006).

Dorpan is correct that incontestibility creates a presumption that the holder of the mark is entitled to exclusive use of the mark throughout the United States.  See Thrifty Rent-A-Car Sys., 831 F.2d at 1180 (citing Giant Foods, Inc. v. Nation's Foodservice, Inc., 710 F.2d 1565, 1568 (Fed. Cir. 1983)); see also 15 U.S.C. § 1065.  Indeed, a plaintiff who holds an incontestible registered

mark is generally entitled to a preliminary injunction enjoining an allegedly infringing party.  See Pyrodyne Corp. v. Pyrotronics Corp., 847 F.2d 1398, 1402 (9th Cir. 1988) (cited in Williams v. Jones, 11 F.3d 247, 256 n.13 (1st Cir. 1993)).

In this case, however, Dorpan's reliance on the undisputed incontestibility of its marks is misplaced.  HMI does not seek to cancel, contest, or otherwise challenge Dorpan's registration. Rather, HMI claims that, as the undisputed senior user in Puerto Rico, the rights granted to Dorpan under federal law are limited by the rights HMI acquired under Puerto Rico law before Dorpan's mark became incontestible.

HMI's argument is often called a "Section 15 defense."  At the same time that Section 15 of the Lanham Act creates incontestibility, it explicitly limits the incontestible right of a federal trademark holder

> to the extent, if any, to which the use of a mark registered on the principal register infringes a valid right acquired under the law of any State or Territory by use of a mark or trade name continuing from a date prior to the date of registration under this chapter of such registered mark.

15 U.S.C. § 1065; see also Qashat, 364 F.3d at 334 n.4 (noting that the incontestibility of a federally registered mark is limited in "situations in which a valid common law owner has established a date of use prior to that of the registered mark").  In other words, "[t]he territorial rights of a holder of a federally registered trademark are always subject to any superior common law

-12-

rights acquired by another party through actual use prior to the registrant's constructive use."  <u>Allard Enter., Inc.</u> v. <u>Advanced Programming Res., Inc.</u>, 249 F.3d 564, 572 (6th Cir. 2001).

Because the parties agree that HMI is the senior user of the Meliá mark in Puerto Rico, the rights conveyed to Dorpan under the Lanham Act are limited by the extent of any rights HMI acquired under Puerto Rico law before Dorpan's federal registration became incontestible.  Hence, before we can determine the contours of Dorpan's rights under federal law, we must determine the rights held by HMI under Puerto Rico law.  See <u>Advance Stores Co.</u> v. <u>Refinishing Specialities, Inc.</u>, 188 F.3d 408, 411-12 (6th Cir. 1999) (extent of pre-existing common law trademark is determined by reference to state law).[10]

**2. HMI's Rights Under Puerto Rico Law**

HMI has never registered its mark with the Puerto Rico

---

[10]  There is some authority suggesting that the extent to which a pre-existing unregistered state law trademark limits rights conferred under the Lanham Act is a question that should be determined by federal common law rather than state law. <u>See</u>, <u>e.g.</u>, <u>Natural Footwear Ltd.</u> v. <u>Hart, Schaffner & Marx</u>, 760 F.2d 1383, 1397-1400 (3d Cir. 1985) (determining the rights of an unregistered senior user against registered junior user without reference to state law).  We think that this approach cannot be reconciled with the plain language of Section 15 of the Lanham Act, which limits the rights conferred on a federal registrant insofar as the registrant's use interferes with "a valid right acquired <u>under the law of any State or Territory</u>." 15 U.S.C. § 1065 (emphasis added). At the same time, the common law of most jurisdictions, including Puerto Rico, seems to be essentially identical to federal common law.  Thus, in practice, the choice of law in this context seems to be a distinction without a difference.

Department of State.  Like most U.S. jurisdictions, however, Puerto Rico law protects both registered and unregistered marks.  See P.R. Laws Ann. tit. 10, § 223a (stating that "[T]he right to use a mark" can be acquired through either "use of the mark in commerce" or registration); Arribas & Assocs. v. Am. Home Prods. Corp., P.R. Offic. Trans., 2005 WL 2290286 (P.R. 2005) ("Our Marks Act [] combines the rights born of use with the rights that arise from the registration." (citation omitted) (internal quotation marks omitted)).  The senior unregistered user of a mark in Puerto Rico does not automatically acquire a Commonwealth-wide right to use the mark.  Rather, the senior unregistered user is entitled to exclusive use of the mark in the area where "he currently do[es] business."  Posadas de P.R. Assocs. v. Sands Hotel & Casino, Inc., P.R. Offic. Trans., 1992 WL 754912 (P.R. 1992); see also Colgate-Palmolive Co. v. Mistolin de P.R., Inc., 17 P.R. Offic. Trans 376, 391-92 (P.R. 1986) ("The territorial extent of trademark rights is coextensive with the territorial extent of its use.").

Thus, in this case, HMI is entitled, under Commonwealth law, to the exclusive use of the Meliá mark in the area where HMI "does business" using the Meliá mark.[11]  In this context, the geographic

---

[11]  Because Dorpan's federal registration of the Meliá mark in the late 1990s "puts all would-be users of the mark (or a confusingly similar mark) on constructive notice of the mark," Thrifty Rent-a-Car Sys., Inc. v. Thrift Cars, Inc., 831 F.2d 1177, 1180 (1st Cir. 1987) (citing 15 U.S.C. § 1072), HMI's trade territory is technically frozen at the extent it had reached at the time of Dorpan's registration.  Neither party, however, argues that

-14-

area in which an unregistered trademark is "in use" is defined as the area in which the use of similar mark would create a likelihood of confusion. See 5 J. McCarthy, McCarthy on Trademarks & Unfair Competition § 26:27 (4th ed. 2011) ("The touchstone of the determination of a trade area is likelihood of confusion.") (internal quotation marks omitted); William Jay Gross, Comment, The Territorial Scope of Trademark Rights, 44 U. Miami L. Rev. 1075, 1078 (1990) ("Th[e] inquiry into the territorial scope of trademark rights is primarily a determination of the geographical area in which there exists a likelihood of confusion between the trademarks of the legitimate user and the infringing user." (citation omitted) (quotation marks omitted)).  Thus, in this case, the inquiry into the geographic scope of HMI's pre-existing common law trademark rights and the likelihood of confusion analysis are one and the same.  In other words, if Dorpan's use of a similar mark in Coco Beach creates a likelihood of confusion with HMI's mark, then HMI's trade area extends at least as far as Coco Beach and Dorpan's use infringes on that right.  Likewise, if Dorpan's mark does not create a likelihood of confusion with HMI's, then HMI's trade area is considerably smaller and Dorpan is entitled to a declaratory judgment of non-infringement.  See 5 McCarthy, § 26:27 ("A trade area is the area in which people have associated a service mark

HMI has changed its trade area since Dorpan registered the Meliá marks, so in this case this principle is irrelevant.

-15-

with a particular business such that they would likely be confused by someone else's unauthorized use of the mark." (internal quotation marks omitted)).

Consequently, both the extent of HMI's rights under Puerto Rico law and Dorpan's rights under federal law turn on the same question:  Does Dorpan's use of the Meliá mark in Puerto Rico create an impermissible likelihood of consumer confusion?

**C. Likelihood of Confusion and the <u>Pignons</u> Factors**

Likelihood of confusion is a question of fact.  In this appeal from a grant of summary judgment, we review de novo whether the record presents a genuine issue of material fact as to likelihood of confusion.  <u>See</u> <u>Sports Auth., Inc.</u> v. <u>Prime Hospitality Corp.</u>, 89 F.3d 955, 960 (2d Cir. 1996) (noting that in the infringement context summary judgment is appropriate only where no reasonable trier of fact could conclude that confusion is likely).

Not all conceivable forms of confusion are relevant to trademark infringement.  "Confusion is relevant when it exists in the minds of persons in a position to influence the purchasing decision or persons whose confusion presents a significant risk to the sales, goodwill, or reputation of the trademark owner." <u>Beacon Mut. Ins. Co.</u> v. <u>OneBeacon Ins. Grp.</u>, 376 F.3d 8, 10 (1st Cir. 2004); <u>see</u> <u>also</u> <u>Lang</u> v. <u>Ret. Living Publ'g Co.</u>, 949 F.2d 576, 583 (2d Cir. 1991) (noting that confusion in the relevant sense means confusion that "could inflict commercial injury in the form of

-16-

either a diversion of sales, damage to goodwill, or loss of control over reputation").  Trademark confusion is occasionally discussed in terms of two different "types" of confusion.  See DeCosta v. Viacom Int'l, Inc., 981 F.2d 602, 607-08 (1st Cir. 1992).  The first, and most common, is "ordinary" or "forward" confusion, which occurs, for example, when a weaker junior user attempts to impermissibly bootstrap its product by free-riding on the senior user's goodwill and brand loyalty.  In a forward confusion situation, reasonable consumers may mistakenly purchase the junior user's product believing they have purchased the senior user's. See id. at 607-08; see also Attrezzi, 436 F.3d at 38 (noting that "ordinary" or "forward" confusion occurs where "the claimant asserts that the infringer is diverting the claimant's customers and free-riding on the claimant's reputation and goodwill").

The second is "reverse confusion," which occurs, for example, when a senior unregistered user is overwhelmed by a more commercially powerful junior user, causing the senior user to lose control over its brand and its goodwill.  Id. at 38-39.  In a reverse confusion scenario, a reasonable consumer might assume that the junior user and the senior user's product shared the same source, thereby imputing any negative experiences with the junior user's product or services to the senior user.  See DeCosta, 981 F.2d at 608; see also Visible Sys. Corp. v. Unisys Corp., 551 F.3d 65, 74 (1st Cir. 2008) ("In a reverse confusion case, the focus is

on the relative strengths of the marks so as to gauge the ability of the junior user's mark to overcome the senior user's mark.").[12]

In determining whether likelihood of confusion exists in a particular case, we consider the eight factors laid out in <u>Pignons S.A. de Mecanique de Precision</u> v. <u>Polaroid Corp.</u>, 657 F.2d 482, 487 (1st Cir. 1981) ("<u>Pignons</u> factors"):

> (1) the similarity of the marks; (2) the similarity of the goods (or, in a service mark case, the services); (3) the relationship between the parties' channels of trade; (4) the juxtaposition of their advertising; (5) the classes of prospective purchasers; (6) the evidence of actual confusion; (7) the defendant's intent in adopting its allegedly infringing mark; and (8) the strength of the plaintiff's mark.

<u>Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO</u> v. <u>Winship Green Nursing Ctr.</u>, 103 F.3d 196, 201 (1st Cir. 1996).[13]

---

[12]   In its brief before us on appeal, Dorpan argues that HMI has waived any reverse confusion argument it might have.  This argument is misguided. "Reverse confusion" is not a separate legal claim requiring separate pleading.  Rather, it is a descriptive term referring to certain circumstances that can give rise to a likelihood of confusion in a trademark infringement suit.  HMI has argued from the beginning that it is the senior unregistered user and that Dorpan's more powerful international brand has caused consumers to believe mistakenly that the two marks are related, thus causing HMI to lose control over its goodwill and reputation. Whether or not HMI called this a "reverse confusion" theory before the district court is irrelevant.

[13]   As discussed <u>supra</u>, we consider the likelihood of confusion here in order to define the scope of HMI's unregistered trademark rights under Puerto Rico law.  Thus, Puerto Rico law, not federal common law, technically governs our likelihood of confusion analysis.  However, because Puerto Rico law uses the same standard for likelihood of confusion as that developed under federal common law, we use the case law developed under both bodies of law interchangeably.  <u>Compare</u> <u>Pignons S.A. de Mecanique de Precision</u> v. <u>Polaroid Corp.</u>, 657 F.2d 482, 487 (1st Cir. 1981), <u>with</u> <u>Posadas de</u>

We review the evidence pertinent to the Pignons factors de novo, considering the evidence offered to support each factor individually before considering whether, taking the factors together, no reasonable factfinder could conclude that Dorpan's use of the Meliá mark in Coco Beach creates a likelihood of confusion. See Astra Pharm. Prods., Inc. v. Beckman Instruments, Inc., 718 F.2d 1201, 1205 (1st Cir. 1983) ("No one factor is necessarily determinative, but each must be considered."). Given this de novo standard of review, we do our own assessment of the summary judgment record before turning to the district court's assessment of that record.

Because the likelihood of confusion analysis is a particularly fact-intensive one, resolving this issue on summary judgment is disfavored. See Bos. Athletic Ass'n v. Sullivan, 867 F.2d 22, 24 (1st Cir. 1989) (noting that "'infringement and unfair competition cases often present factual issues that render summary judgment

---

P.R. Assocs. Inc. v. Sands Hotel & Casino, Inc., P.R. Offic. Trans., 1992 WL 754912 (P.R. 1992):

> [T]here is no specific rule for determining the existence of a likelihood of confusion between two products or services. This is a relative concept, determined according to the circumstances of each particular case, based upon the balancing of caselaw factors or tests, some of which are: the similarity of the two marks; similarity of the goods or services; strength or distinctiveness of the mark; the intent of the junior user in adopting the service mark; and evidence of actual confusion.

inappropriate'" (quoting Kazmaier v. Wooten, 761 F.2d 46, 48-49 (1st Cir. 1985)); see also Rearden LLC v. Rearden Commerce, Inc., 683 F.3d 1190, 1219 (9th Cir. 2012) ("[D]istrict courts should grant summary judgment motions regarding the likelihood of confusion sparingly, as careful assessment of the pertinent factors that go into determining likelihood of confusion usually requires a full record." (citation omitted) (internal quotation marks omitted)); AHP Subsidiary Holding Co. v. Stuart Hale Co., 1 F.3d 611, 616 (7th Cir. 1993) ("[A] motion for summary judgment in trademark infringement cases must be approached with great caution."); Country Floors, Inc. v. P'ship Composed of Gepner & Ford, 930 F.2d 1056, 1063 (3d Cir. 1991) (noting that in the likelihood of confusion context "summary judgments are the exception"). The Pignons factors are meant to be a guide, not a mechanistic formula. See Winship Green, 103 F.3d at 201.

**1. Similarity of the Marks**

The marks "Hotel Meliá" and "Gran Meliá" are essentially identical for trademark purposes because both marks have the word "Meliá" as their most salient word. See Bos. Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 34 (1st Cir. 2008) (DiClerico, J., concurring) ("[I]f the most dominant feature of both marks is the same or similar, then that similarity may cause confusion."); Beacon Mut., 376 F.3d at 18 (concluding that a reasonable factfinder could conclude that the mark "Beacon Mutual Insurance

-20-

Company" was substantially similar to "OneBeacon Insurance Group" because they shared "Beacon" as their "most salient" word). No reasonable factfinder could conclude otherwise.

## 2. Similarity of Services and Customers

Undisputed evidence indicates that Hotel Meliá and Gran Meliá are large, full-service hotels operating in Puerto Rico. Dorpan attempts to distinguish the services offered by Gran Meliá from those offered by Hotel Meliá by emphasizing that Gran Meliá is a "beach resort" while Hotel Meliá is a "historic, urban hotel." The evidence Dorpan offers to support this argument -- for example, that Hotel Meliá's pool is smaller than Gran Meliá's -- is weak. Each hotel may offer some auxiliary services and amenities not offered by the other, but there is substantial overlap in the core services offered by each hotel. Thus, a reasonable factfinder would be compelled to infer from the undisputed facts that the hotels offer substantially similar services to substantially similar customers -- overnight, upscale lodgings to tourists and short-term visitors to Puerto Rico.

## 3. Similarity of Advertising and Channels of Trade

The two hotels advertise and solicit customers in substantially similar manners. Both parties attend trade shows, develop relationships with travel agents, advertise directly to consumers, and accept reservations through Internet booking sites like Orbitz. Because Dorpan has not directed us to any facts in

-21-

the record suggesting the contrary, we conclude that a reasonable factfinder would be compelled to conclude that the hotels use similar advertising methods and conduct business through similar channels of trade.

### 4. Actual Confusion

HMI argues that Dorpan's use of the Gran Meliá mark in Puerto Rico has led to actual confusion. In support of this argument, HMI points to several pieces of evidence in the record.[14] First, HMI's manager Raúl Albors Meliá testified in his deposition that a wholesaler at a trade show had noticed that he represented Hotel Meliá and approached him to discuss the beach at Gran Meliá.[15]

---

[14] Dorpan makes hearsay objections to much of the evidence HMI cites in support of its argument. Dorpan failed to make these objections before the district court, however. They are thus waived. See United States v. DeSimone, 488 F.3d 561, 580 n.11 (1st Cir. 2007) (noting that failing to raise a hearsay objection before the district court constitutes waiver). Moreover, much (if not all) of the objected-to evidence was not admitted for the truth of the matter asserted, and accordingly is not hearsay. See Fed. R. Evid. 801(c).

[15] There is a dispute between the parties as to whether this portion of Albors Meliá's testimony was properly part of the record before the district court. At this remove, the precise travel of this evidence is difficult to discern. This particular portion of Albors Meliá's deposition was originally submitted as an attachment to HMI's Supplemental Motion in Opposition to Gran Meliá's Motion for Summary Judgment, which the original district court judge struck from the record without explanation. After the case was transferred to a new district judge, that judge directed the parties to "submit in hard copy their respective dispositive motions" to him. HMI claims that it submitted the deposition evidence and it was accepted. Indeed, from the district court's discussion of the evidence in its opinion, it appears that the district court deemed the evidence properly submitted. Specifically, the district court noted that HMI "put forth some

-22-

Second, Albors Meliá testified that guests had occasionally thought that Hotel Meliá was associated with Gran Meliá.  Third, Albors Meliá testified that Domino's Pizza mistakenly attempted to deliver a pizza to HMI that was intended for Gran Meliá.  Fourth, HMI introduced a notice of claim letter from the Fajardo office of the Puerto Rico Department of Labor notifying HMI that a laid-off employee had sought benefits, and HMI's subsequent reply stating that the employee had never been employed at Hotel Meliá.  HMI suggests that because the letter came from the Fajardo office, which is close to Gran Meliá, rather than the Ponce office, it was probably intended for Gran Meliá.

Though HMI's evidence supporting an inference of actual confusion is not overwhelming, evidence of actual confusion in this context does not need to be overwhelming to give rise to a reasonable inference of confusion.  Indeed, "even a few incidents" of actual confusion are "highly probative of the likelihood of confusion."  Kos Pharms., Inc. v. Andrx Corp., 369 F.3d 700, 720 (3d Cir. 2004) (citation omitted) (internal quotation marks omitted); see also Sports Auth., 89 F.3d at 964 (concluding that on

_____

evidence of confusion by vendors."  Other than this portion of Albors Meliá's testimony, there seems to be no evidence in the record of confusion by vendors.  In any event, Dorpan did not object to the re-submission below.  Any objection it may have had is waived.  See DiMarco-Zappa v. Cabanillas, 238 F.3d 25, 34 (1st Cir. 2001) ("This Court has repeatedly warned litigants that 'arguments not made initially to the district court cannot be raised on appeal.'" (citation omitted)).

the actual confusion prong "evidence of misdirected phone calls between [plaintiff's] stores and [defendant's] restaurants, and especially the evidence that customers have believed there to be a connection between the restaurants and stores, is sufficient to create a genuine issue of fact on this factor"). As such, we think a reasonable jury could conclude that HMI has demonstrated at least some level of actual confusion.

**5. Dorpan's Intent**

There is no evidence from which a reasonable factfinder could infer that Dorpan decided to use the mark Meliá in order to cause market confusion or with an intent to exploit Hotel Meliá's reputation and goodwill.

**6. Strength of the Marks**

In evaluating the strength of a mark, we consider "its tendency to identify the goods sold under the mark as emanating from a particular [] source." Eli Lilly & Co. v. Natural Answers, Inc., 233 F.3d 456, 464 (7th Cir. 2000) (citation omitted) (internal quotation marks omitted). "[W]e typically evaluate a mark's strength primarily on the basis of its commercial strength, analyzing such factors as 'the length of time a mark has been used and the relative renown in its field; the strength of the mark in plaintiff's field of business; and the plaintiff's action in promoting the mark.'" Bos. Duck Tours, 531 F.3d at 16 n.14 (quoting Equine Techs., Inc. v. Equitechnology, Inc., 68 F.3d 542,

547 (1st Cir. 1995)).

Here, the parties have developed relatively little evidence from which a factfinder could draw inferences about the relative strength of the marks and their tendency to create confusion. It is undisputed that HMI has operated Hotel Meliá in the center of the second largest city in Puerto Rico for more than one hundred years. Indeed, the Hotel Meliá name was sufficiently well-known even a century ago to attract famous guests like President Roosevelt. Likewise, neither party disputes that Dorpan and the Sol Meliá family of hotels has significant international brand recognition and far greater financial resources than HMI.

In our view, there are genuine issues of material fact on the respective strength of the competing marks. That is, evidence in the record suggests that both marks have certain strengths, and the relevant question at trial will be whether their relative strengths contribute to consumer confusion. For example, a reasonable jury could conclude that Dorpan will be able to use its greater financial strength to flood the market with advertising, thereby causing HMI to lose control over its brand and reputation. At the same time, a reasonable jury could conclude that Hotel Meliá was so strongly associated with historic downtown Ponce that consumers were unlikely to associate it with a hotel in Coco Beach.

**7. Balancing the Factors**

With one exception, the district court's conclusions about the

individual <u>Pignons</u> factors were identical to our own. Like us, the district court concluded that a reasonable jury would be compelled to conclude that at least six <u>Pignons</u> factors supported HMI's claims of confusion: 1) the marks were similar; 2) the customers were similar; 3) the services offered were similar; 4) the advertising methods were similar; 5) the channels of trade were similar; and 6) there was at least some evidence of actual confusion. The district court also concluded that there was no evidence from which a reasonable jury could find that Dorpan had acted in bad faith. The only factor on which the district court reached a different conclusion than we do is the strength of the marks. The district court concluded that a reasonable jury would be compelled to infer that HMI's mark was only strong within Ponce, while Dorpan had a strong international mark.

The court then offered this dispositive balancing analysis:

> With the factors split, the court finds these two marks can co-exist within Puerto Rico without causing substantial confusion to the reasonable consumer. However, the court must define the limits within which each mark may be used. HMI's use was frozen at the time [Dorpan] acquired the trademark on December 30, 1997. On this date, HMI's use of the Meliá mark is frozen. As of this date, HMI operated one hotel in Ponce, Puerto Rico. HMI had no plans to expand its business at that time and had been operating in that location for the previous eighty to one hundred years. These facts demonstrate HMI was in continuous operation within Ponce, long before the registration of Gran Meliá by Dorpan. Therefore, the court finds HMI may continue to use the Meliá name within Ponce, Puerto Rico, but must refrain from using the Meliá name in any future business ventures outside of Ponce. Conversely, [Dorpan] is barred from extending its services into Ponce, but may use its trademarks

throughout the rest of the island and the U.S.

Dorpan, S.L., 851 F. Supp. 2d at 411 (citations omitted).

There are a number of errors in the district court's analysis. First, the district court gave too little weight to evidence of actual confusion.  In the past, we have noted that once the party alleging infringement has put forward evidence of actual confusion, the alleged infringer is left "fighting an uphill battle in arguing that no reasonable factfinder could find a substantial likelihood of confusion.  Evidence of actual confusion is often considered the most persuasive evidence of likelihood of confusion because past confusion is frequently a strong indicator of future confusion." Beacon Mut., 376 F.3d at 18; see also Country Floors, 930 F.2d at 1064 (noting that "actual confusion usually implies a likelihood of confusion").

Second, even without evidence of actual confusion, evidence of the substantial similarity between the marks, services, customers, and advertising might be sufficient in itself to create at least a reasonable inference of a substantial likelihood of confusion between the two hotels.  Many courts have found that a triable issue of confusion exists where two companies use marks that are somewhat similar but not identical.  See, e.g., AHP Subsidiary Holding Co., 1 F.3d at 617 (finding confusion was triable issue in dispute between two cooking sprays, one called "PAM" and one called "Pan-Lite"). Others have found that a likelihood of confusion

-27-

exists when companies use identical marks in different industries. See, e.g., Sports Auth., 89 F.3d at 962 (finding likelihood of confusion was a triable issue in dispute between a sporting goods store and a restaurant that both used the mark "Sports Authority"). The situation in this case involves an even greater likelihood of confusion. Two hotels are using a nearly identical mark to sell nearly identical services in a relatively small geographic area.

Third, the district court gave far too much weight to its conclusion that Dorpan had not acted in bad faith. We have noted that the lack of intent on the alleged infringer's part to create confusion is not particularly useful in the ultimate determination of likelihood of confusion and "may not outweigh other factors that suggest a likelihood of confusion." I.P. Lund Trading ApS, 163 F.3d at 44 (noting that "little weight should be given" to a finding that the alleged infringer had not acted with bad faith); see also Star Fin. Servs., Inc. v. AASTAR Mortg. Corp., 89 F.3d 5, 11 (1st Cir. 1996) (noting that "[e]vidence of bad intent . . . [is] potentially probative of likelihood of confusion . . . [but] 'a finding of good faith is no answer if likelihood of confusion is otherwise established'" (quoting President & Trs. of Colby Coll. v. Colby Coll.-N.H., 508 F.2d 804, 811-12 (1st Cir. 1975))).

Fourth, the district court's emphasis on the physical locale of the marks is largely beside the point. While the district court is correct that "HMI's use of the Meliá mark is frozen" at its 1997

extent, see supra note 11, the district court was incorrect to equate the use of the mark with the location of the hotel. The relevant inquiry here is the area in which the mark is in use in commerce. For hotels, that area is usually a much larger area than the city in which the hotel operates. Unlike many companies, such as retail outlets and professional services, that rely on service marks and have a local customer base, hotels seek to attract customers physically distant from the point of service. See 5 McCarthy, § 26:30 ("The trade area for services such as hotels, motels, and restaurants may be very large since purchasers are ambulatory and on the move. They may carry the reputation of the mark thousands of miles away from the actual outlet."). Customers of upscale hotels typically do not live in the area where the hotel is located. The reputation of an upscale hotel that has been attracting guests for more than a century is unlikely to be limited only to the city where it is located.

Finally, the district court took an impermissibly narrow view of confusion when considering the evidence offered about mark strength. Indeed, in holding that HMI "must refrain from using the Meliá name in any future business ventures outside of Ponce" while Dorpan "is barred from extending its services into Ponce," the district court appears to have inappropriately equated confusion with diversion of sales, overlooking the fact that trademark law also seeks to protect mark holders from commercial injury involving

-29-

damage to the holder's goodwill and control over its reputation. Beacon Mut., 376 F.3d at 10. In other words, the issue here is not simply whether the likelihood of confusion might lead customers to book a room in one hotel when intending to book a room at the other. It is also relevant that a reasonable consumer's mistaken beliefs about the relationship between the two hotels could cause an injury to HMI's goodwill and reputation. For example, a reasonable factfinder could conclude that HMI has a valid concern that customers traveling to Puerto Rico who have had a bad experience at Gran Meliá, might impute that bad experience to Hotel Meliá when booking a subsequent trip or influencing others traveling to Puerto Rico. See I.P. Lund Trading ApS, 163 F.3d at 35 (noting that trademark protection protects "that which identifies a product's source").

Given these errors in the district court's analysis of the likelihood of confusion, we must vacate its summary judgment ruling and remand for further proceedings. On this record, there are genuine issues of material fact on the likelihood of confusion. Though we conclude that there is sufficient evidence to create such issues of fact, we note that the record in this case is sparse, particularly given the fact-intensive nature of the inquiry. The evidence is especially sparse on the question of how the two hotels market their services and how the respective strength of their marks in the competitive hotel marketplace

affects the perception of potential consumers about the hotels and their decision to use their services.  On remand, whether discovery should be reopened as the parties prepare for trial is a question we leave to the discretion of the district court.

### III.

For the reasons set forth, we **vacate** the district court's entry of summary judgment for Dorpan on its declaratory judgment action seeking a declaration of non-infringement and **remand** for further proceedings consistent with this opinion.  The district court's judgment on HMI's collateral estoppel claim is not affected by this decision.  Costs to appellant.

**So ordered.**