# United States Court of Appeals
## For the First Circuit

No. 15-1009

ORIENTAL FINANCIAL GROUP, INC., ORIENTAL FINANCIAL SERVICES
CORP., ORIENTAL BANK AND TRUST,

Plaintiffs, Appellants,

v.

COOPERATIVA DE AHORRO Y CRÉDITO ORIENTAL,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

Before

Barron, Hawkins,[*] and Lipez,
Circuit Judges.

Roberto C. Quiñones-Rivera, with whom Leslie Yvette Flores
and McConnell Valdés LLC were on brief, for appellants.
Carla Ferrari-Lugo, with whom Veronica Ferraiuoli-Hornedo was
on brief, for appellee.

August 3, 2016

[*] Of the Ninth Circuit, sitting by designation.

**LIPEZ**, **Circuit Judge**.  Four years ago, we affirmed a judgment that a Puerto Rico credit union (in Spanish, a "cooperativa") infringed on the trademark rights of a competing bank by adopting a confusingly similar logo and trade dress. Oriental Fin. Grp., Inc. v. Cooperativa de Ahorro y Crédito Oriental, 698 F.3d 9 (1st Cir. 2012) ("Oriental I").  In this subsequent appeal, we consider whether the credit union also infringed the bank's word mark and trade name ORIENTAL with its competing marks COOP ORIENTAL, COOPERATIVA ORIENTAL, ORIENTAL POP, and CLUB DE ORIENTALITO.  Notwithstanding the similarity between them, the district court found that the latter marks did not infringe upon the former, and refused to enjoin their use.

With regard to COOP ORIENTAL, COOPERATIVA ORIENTAL, and ORIENTAL POP, the district court's determination of non-infringement was clearly erroneous.  We reverse that portion of the judgment and remand for reconsideration of whether the injunction should be expanded to remedy the infringing use of those marks.  We conclude, however, that the district court's determination is supportable as to CLUB DE ORIENTALITO, and affirm that portion of the judgment.

**A.   Competing financial institutions**

Plaintiffs-appellants Oriental Financial Group, Inc.,[1] Oriental Bank and Trust, and Oriental Financial Services Corp. (collectively, "Oriental Group") originated in eastern Puerto Rico and expanded to offices and retail locations throughout the island. It has used the word mark ORIENTAL to market its financial services since 1964.[2] The mark means "eastern" in both Spanish and English. Although it originally signaled Oriental Group's geographic origins, it is now used as an arbitrary mark[3] to distinguish its

---

[1] Oriental Financial Group, Inc. changed its name to OFG Bancorp on April 25, 2013, during the pendency of this litigation.

[2] We use "word mark" herein to refer to a standard character mark, not limited to "any particular font style, size or color," Citigroup Inc. v. Capital City Bank Grp., Inc., 637 F.3d 1344, 1353 (Fed. Cir. 2011) (quoting 37 C.F.R. § 2.52(a)), or other design elements, see Igloo Prods. Corp. v. Brantex, Inc., 202 F.3d 814, 815, 817 (5th Cir. 2000) (distinguishing trademark protection for "a words-only trademark" from "a trademark including both words and images in a distinct manner").

[3] As an arbitrary mark, ORIENTAL does not convey to the consumer that Oriental Group's financial services are somehow "eastern" in their character. ORIENTAL, "when used with the . . . services in issue, neither suggest[s] nor describe[s] any ingredient, quality or characteristic of those . . . services." 2 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition § 11:11, Westlaw (database updated June 2016); cf. Sun Banks of Fla., Inc. v. Sun Fed. Sav. & Loan Ass'n, 651 F.2d 311, 315-17 (5th Cir. 1981) (suggesting that SUN is an arbitrary mark, neither describing the geographic origin of a Florida-based bank, nor any characteristic of the bank's services). In its brief in this appeal, Cooperativa appears to contend that the ORIENTAL mark is geographically descriptive rather than arbitrary. Having failed

financial services from others in the marketplace.  Oriental Group also uses a logo consisting of the word ORIENTAL in orange letters and distinctive orange trade dress.  Oriental I, 698 F.3d at 14.

Defendant-appellee Cooperativa de Ahorro y Crédito Oriental ("Cooperativa") has used ORIENTAL in its full name since 1966, and began using a shortened version, COOP ORIENTAL, in 1995.  For many years its advertising was "de minimis," id. at 23, and it maintained only a few branches in the eastern part of the island.  However, starting in 2008, Cooperativa substantially expanded its geographic reach, changed its branding, and began an advertising campaign at roughly the same time.  Between 2008 and 2010, Cooperativa added branches in San Juan and other regions of Puerto Rico, becoming a competitor to Oriental Group in such financial services as checking and savings accounts, certificates of deposit, IRAs, and credit cards.  See id. at 13-14; Oriental Fin. Grp. Inc. v. Cooperativa de Ahorro y Crédito Oriental, 750 F. Supp. 2d 396, 400-01 (D.P.R. 2010) ("2010 Injunction Order").  In 2009, it rebranded itself and adopted new trade dress, similar to Oriental's in tone and its use of the color orange.  Oriental I, 698 F.3d at 13-14; 2010 Injunction Order, 750 F. Supp. 2d at 401. As part of the rebranding, it also adopted a black, brown and orange logo featuring the COOP ORIENTAL word mark, with the word

_____

to raise this argument on the first appeal, however, it cannot do so here.

ORIENTAL in larger type than COOP. 2010 Injunction Order, 750 F. Supp. 2d at 401. At the same time, it initiated "an expansive advertising campaign in newspapers[,] television . . . [and] billboards." Oriental I, 698 F.3d at 14. Soon thereafter, several incidents of consumer confusion occurred in which consumers wrongly believed that Oriental Group and Cooperativa were affiliated. Id. at 19. Oriental Group then brought this action on May 21, 2010.

**B.   The district court proceedings**

Oriental Group sued Cooperativa for, inter alia, service mark[4] infringement under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).[5] Oriental Group alleged that Cooperativa's COOP ORIENTAL word mark, and its logo and trade dress, were confusingly similar to its ORIENTAL mark. Oriental I, 698 F.3d at 14. It asked for injunctive relief against Cooperativa to prevent the use of, inter alia, "any composite trademark that includes the term

---

[4] Because the marks at issue are used to identify the source of financial services rather than goods, they are service marks rather than trademarks. See Chance v. Pac-Tel Teletrac Inc., 242 F.3d 1151, 1156 (9th Cir. 2001) ("Service marks and trademarks are governed by identical standards . . . .").

[5] Oriental Group also sued under the Puerto Rico Trademark Act of 2009, Act No. 169 of Dec. 16, 2009. Consistent with the district court's decision and the parties' briefs, we concern ourselves only with federal trademark law, and assume without deciding that there are no relevant differences between the Lanham Act and the Puerto Rico Trademark Act of 2009. See Oriental I, 698 F.3d at 16 n.4.

ORIENTAL."  Id. (emphasis added).  This claim did not include Cooperativa's full name, which Oriental concedes is non-infringing.  Id. at 20.

After a preliminary injunction hearing in 2010, which the parties subsequently agreed to treat as a bench trial on the issue of a permanent injunction, the district court made findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a).  2010 Injunction Order, 750 F. Supp. 2d at 400. The court found that Oriental Group's "mark is strong in Puerto Rico," that it and Cooperativa "offer many of the same services to some of the same geographical regions in Puerto Rico," and "advertise in the same newspapers," and that incidents involving actual consumer confusion took place beginning in 2010.  Id. at 403-04.  Building on those findings, the district court concluded that Cooperativa's "new logo -- in particular, the prominent placement of the word 'Oriental' -- and its new color scheme," in "combination," "infringe[] [Oriental Group's] service mark under both federal and Puerto Rico law."  Id. at 406.

In determining whether an injunctive remedy was appropriate, the court considered the factors outlined in eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388 (2006).  See eBay, 547 U.S. at 391 (listing equitable considerations that must be considered before a permanent injunction may be issued); Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 34

- 6 -

(1st Cir. 2011) (applying the eBay factors in the trademark context).  After determining that Oriental Group suffered ongoing and irreparable harm from the infringement, that the balance of hardships favored Oriental Group, and that the public interest would be served by an injunction, see eBay, 547 U.S. at 391, the court enjoined Cooperativa from using its infringing orange trade dress and logo, 2010 Injunction Order, 750 F. Supp. 2d at 405.

Though it was not clear on this point, the district court apparently believed that Oriental Group was challenging only Cooperativa's logo and trade dress, and had not challenged its use of the word mark COOP ORIENTAL.  Oriental I, 698 F.3d at 16 (citing 2010 Injunction Order, 750 F. Supp. 2d at 404, 406).  Consistent with that view of the case, the district court never analyzed the likelihood of confusion based on the word mark alone, and allowed Cooperativa to "revert to the mark and dress it used prior to 2009," which incorporates COOP ORIENTAL.  2010 Injunction Order, 750 F. Supp. 2d at 406.  Its order also left Cooperativa free to use the word mark in print and radio advertising.  Cooperativa subsequently registered COOP ORIENTAL and COOPERATIVA ORIENTAL with the United States Patent and Trademark Office (PTO).

**C.   The first appeal**

Unsatisfied, Oriental Group moved to amend or alter the injunction to proscribe all use of COOP ORIENTAL and COOPERATIVA ORIENTAL, even when not embedded in the infringing logo or

- 7 -

accompanied by the infringing trade dress.  Oriental I, 698 F.3d

at 15.  It noted that consumers might encounter the word marks

abstracted from logos or trade dress in radio advertisements and

news media.  The district court denied the motion on the ground

that Oriental Group had not shown a likelihood of confusion based

on the word marks alone.  The court reasoned that Oriental Group's

evidence of consumer confusion was limited to the time following

the 2009 introduction of Cooperativa's new logo, whereas

Cooperativa's use of its shortened names, COOP ORIENTAL and

COOPERATIVA ORIENTAL, had begun in 1995.  Id.  The district court

entered final judgment, and Oriental Group timely appealed.[6]

In the first appeal, as here, the only issue was the

likelihood of confusion.  We affirmed the judgment in part and

vacated in part.  We held that "to the extent that the district

court concluded that Oriental did not challenge the COOP ORIENTAL

mark divorced from the 2009 orange trade dress, it was incorrect."

Id. at 16.  To the contrary, "[t]he record is clear that Oriental

challenged not only Cooperativa's use of the 2009 logo and trade

---

[6] Oriental Group first raised the issue of ORIENTAL POP and CLUB ORIENTALITO (a variant of CLUB DE ORIENTALITO) in a supplemental brief supporting its motion to amend or alter the injunction.  These marks are not used as trade names for Cooperativa as a whole -- they refer to financial products for teenagers and children, respectively.  In denying Oriental Group's motion, the district court did not address these marks.  Oriental Group later asked that CLUB DE ORIENTALITO be enjoined, and dropped references to CLUB ORIENTALITO.  We address ORIENTAL POP and CLUB DE ORIENTALITO in Part IV, infra.

dress, but also Cooperativa's use of the COOP ORIENTAL mark and similar marks apart from that trade dress." Id. Further, we held that the district court erred when it rejected the request to broaden the injunction on the ground that there was no evidence of actual confusion prior to 2009. Id. at 17. As we pointed out, this ruling ran "contrary to the established principle that evidence of actual confusion is not necessary to establish a likelihood of confusion." Id.; accord Societe des Produits Nestle, S.A. v. Casa Helvetia, Inc., 982 F.2d 633, 640 (1st Cir. 1992). Accordingly, we remanded for "the district court to determine whether the COOP ORIENTAL mark and similar marks create a likelihood of confusion, and to fashion an appropriate injunction if a likelihood of confusion is established." Oriental I, 698 F.3d at 24.

Before remanding, we observed that "many of the findings made by the district court are not specific to the orange trade dress contained in the 2009 logo, and thus are equally relevant in assessing Cooperativa's use of the COOP ORIENTAL mark standing alone." Id. at 18. The district court had found that five of the eight Pignons factors, used as a framework to gauge the likelihood of confusion between marks, weighed in Oriental Group's favor. Id.; see Pignons S.A. de Mecanique de Precision v. Polaroid Corp., 657 F.2d 482, 487 (1st Cir. 1981). We held that the analysis of those factors -- the similarity of Oriental Group's and

- 9 -

Cooperativa's services (second factor); the relationship between their channels of trade, advertising, and prospective customers (third, fourth, and fifth factors); and the strength of Oriental Group's mark (eighth factor) -- "equally support[ed] a finding of likelihood of confusion with respect to the COOP ORIENTAL mark divorced from the 2009 logo." Oriental I, 698 F.3d at 18. As for the similarity of the marks (first factor), evidence of actual confusion (sixth factor), and Cooperativa's intent (seventh factor), we recognized that they might apply differently to the word marks alone. Id. at 18-19. We "conclude[d] that there is at least evidence in the record that would support" a finding of likely confusion based on COOP ORIENTAL but left evaluation of the evidence to the district court in the first instance. Id. at 18. We instructed the district court to consider whether COOPERATIVA ORIENTAL "and other potentially infringing usages of the ORIENTAL mark" created a likelihood of confusion, but did not directly address ORIENTAL POP or CLUB DE ORIENTALITO. Id. at 19-20.

**D.  This appeal**

Roughly two years after we remanded the case, the district court ordered a joint status report, and the parties expressly declined to conduct further discovery or participate in another evidentiary hearing. Accordingly, the district court reviewed the same record evidence it first considered in 2010, and considered whether Cooperativa's word marks created a likelihood

of confusion.  Oriental Fin. Grp., Inc. v. Cooperativa de Ahorro y Crédito Oriental, No. 3:10-cv-1444 (JAF), 2014 WL 5844166 (D.P.R. Nov. 12, 2014) ("2014 Order").  With regard to COOP ORIENTAL and COOPERATIVA ORIENTAL, the district court found that the first, sixth, and seventh Pignons factors weighed in favor of Cooperativa, and concluded that with five factors favoring the plaintiffs and three favoring the defendant, "Plaintiffs have not demonstrated a likelihood of confusion by Defendant's use of the word marks 'Coop Oriental' or 'Cooperativa Oriental.'"  Id. at *5.  It also found no likelihood of confusion with respect to ORIENTAL POP and CLUB DE ORIENTALITO.  Id. at *6.  Accordingly, it determined that the word marks were non-infringing and found "no basis to broaden the injunctive relief."  Id. at *7.

Oriental Group timely brought this appeal.  It argues that four word marks used by Cooperativa -- COOP ORIENTAL, COOPERATIVA ORIENTAL, ORIENTAL POP, and CLUB DE ORIENTALITO -- create a likelihood of confusion and therefore infringe its ORIENTAL mark, and it seeks to enjoin Cooperativa from using them. Cooperativa argues that they do not create a likelihood of confusion, and that therefore the district court did not err in denying Oriental Group's request to enjoin their use.

## A. Standard of review

To prevail in a trademark infringement claim under the Lanham Act, "a plaintiff must establish (1) that its mark is entitled to trademark protection, and (2) that the allegedly infringing use is likely to cause consumer confusion." Boston Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 12 (1st Cir. 2008). As the case comes to us, it is established that ORIENTAL is an arbitrary -- and therefore inherently distinctive -- service mark, Oriental I, 698 F.3d at 18 n.7, and that Oriental Group is its senior user, id. at 13. Hence, Oriental Group's mark is entitled to protection, and we need only address whether the allegedly infringing marks create a likelihood of confusion.[7]

The issue before us is thus one of fact. Dorpan, S.L. v. Hotel Meliá, Inc., 728 F.3d 55, 64 (1st Cir. 2013) ("Likelihood of confusion is a question of fact."); Boston Duck Tours, 531 F.3d at 15 (stating that the Pignons factors, used to gauge likelihood of confusion, are issues of fact). We do not set aside findings of fact unless they are clearly erroneous. In re Pharm. Indus.

---

[7] Cooperativa belatedly suggests that Oriental Group does not have rights in ORIENTAL. In its words, "the evidence fails to show that [Oriental Group] has consistently used the mark 'oriental' alone, which it now wants to appropriate through judicial fiat." The argument should have been raised on the first appeal. It is now established that ORIENTAL is a protected mark of Oriental Group.

Average Wholesale Price Litig., 582 F.3d 156, 163 (1st Cir. 2009);

Fed. R. Civ. P. 52(a)(6). Accordingly, we may set aside the

district court's findings on the likelihood of confusion or the

Pignons factors only if we are "left with the definite and firm

conviction that a mistake has been committed." Anderson v. City

of Bessemer City, 470 U.S. 564, 573 (1985) (quoting United States

v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)).[8]

If we are convinced that there is "only one permissible

interpretation" of the evidence on the Pignons factors or the

likelihood of confusion, we are empowered to substitute our own

finding for that of the district court. Muñiz v. Rovira-Martinó,

453 F.3d 10, 13 (1st Cir. 2006); see also Dorpan, 728 F.3d at 66

(determining on appeal that "'Hotel Meliá' and 'Gran Meliá' are

essentially identical for trademark purposes," and that "[n]o

reasonable factfinder could conclude otherwise"). As we put it in

Boston Duck Tours, where the district court errs but "the

---

[8] As discussed above, we review the district court's order denying Oriental Group's motion to expand the scope of the permanent injunction. Though injunctions are "often said to be reviewed for abuse of discretion, a more complete statement is that issues of law are reviewed de novo, factual findings for clear error, and most other issues -- procedure, balancing of factors, even law application -- with varying degrees of deference depending upon the circumstances." Diálogo, LLC v. Santiago-Bauzá, 425 F.3d 1, 3 (1st Cir. 2005) (citation omitted). In this case, the district court's decision not to expand the injunction to encompass Cooperativa's word marks was based entirely on the factual finding that the word marks created no likelihood of confusion and were therefore non-infringing. Our review is limited to that finding, and therefore we apply the clear error standard.

underlying facts are largely undisputed," a remand would be "a waste of judicial resources" and we may draw our own conclusions on the Pignons factors and the likelihood of confusion.  531 F.3d at 15.[9]

## B. Legal background

We assume familiarity with trademark law, as discussed in Oriental I, 698 F.3d at 15-17, and summarize only those aspects relevant to the theory of infringement argued by Oriental Group in this appeal.  To set the stage, Oriental Group consists of a number of financial firms with ORIENTAL in their names, and it has rights in a family of marks, including the following: ORIENTAL GROUP, ORIENTAL BANK, ORIENTAL MONEY, ORIENTAL INSURANCE, ORIENTAL MORTGAGES, ORIENTAL ETA,[10] KEOGH ORIENTAL,[11] ORIENTAL SAVINGS PLUS,

---

[9] In Oriental I, 698 F.3d at 19, we quoted Munoz v. Porto Rico Ry. Light & Power Co. for the proposition that "this court on appeal will not undertake to find the facts or to lay down rulings on specific issues . . . but will remand the case to the court below for final disposition on the evidence."  83 F.2d 262, 270 (1st Cir. 1936) (omission in original).  That was the wisest course in Munoz, where we heard an appeal from the grant of a preliminary injunction at the outset of a case in which key facts were disputed.  It was also the best course in Oriental I itself, given that the district court had entirely omitted to address the issue of the word marks, and was well-placed to consider the issue in the first instance.  In both cases, the district court had not yet weighed in on issues of fact.  Munoz does not state a general rule beyond such a case.

[10] ORIENTAL ETA refers to an Electronic Transfer Account.

[11] ORIENTAL KEOGH refers to a type of retirement plan formerly known as a "Keogh plan."

ORIENTAL MANAGED INVESTMENTS, ORIENTAL FINANCIAL GROUP, ORIENTAL FINANCIAL SERVICES, ORIENTALONLINE.COM, ORIENTAL KIDS, and ORIENTAL AMIGA.[12]  Id. at 18 ("[T]he ORIENTAL mark is used as a surname in Oriental's family of marks to identify businesses and services associated with Oriental [Group.]"); see also J & J Snack Foods Corp. v. McDonald's Corp., 932 F.2d 1460, 1462 (Fed. Cir. 1991) (defining "family of marks").  In essence, Oriental Group's theory is that the infringing marks will be seen as members of the ORIENTAL family of marks, and, as a result, Cooperativa will be confused for a member of Oriental Group's corporate family.  See 15 U.S.C. § 1125(a)(1)(A) (defining trademark infringement to include "confusion . . . as to the affiliation, connection, or association of [the defendant] with [the plaintiff], or as to the origin, sponsorship, or approval of his or her . . . services").  This confusion would arguably allow Cooperativa to free-ride on the reputation, or imply that it has the financial backing, of the larger Oriental Group.[13]

---

[12] At trial, Oriental Group produced evidence of the Puerto Rico registrations of ORIENTAL MONEY, ORIENTALONLINE.COM, ORIENTAL KIDS, and ORIENTAL AMIGA.  Per Cooperativa's motion in this court, we take judicial notice of Oriental Group's Puerto Rico registration of ORIENTAL MANAGED INVESTMENTS.  Other marks listed above have been used in commerce but are not necessarily registered.  Though we have recognized an ORIENTAL family of marks, this is not necessarily a complete list of its members, and we offer no opinion on whether all of the listed marks are protected in their own right.

[13] Oriental Group illustrates the family-of-marks concept with other examples from the Puerto Rico banking sector.  One of its

As stated above, whether the defendant's mark creates a likelihood of confusion is analyzed using eight non-exclusive factors, sometimes referred to as the Pignons factors. This analysis requires a comparison of the allegedly infringing mark with the plaintiff's protected marks. Courts consider: "(1) the similarity of the marks; (2) the similarity of the goods; (3) the relationship between the parties' channels of trade; (4) the relationship between the parties' advertising; (5) the classes of prospective purchasers; (6) evidence of actual confusion; (7) the defendant's intent in adopting its mark; and (8) the strength of the plaintiff's mark." Oriental I, 698 F.3d at 17 (quoting Beacon Mut. Ins. Co. v. OneBeacon Ins. Grp., 376 F.3d 8, 15 (1st Cir. 2004)); see also Pignons, 657 F.2d at 487.

Because the district court has already found that the second, third, fourth, fifth, and eighth factors weigh in favor of a finding of likelihood of confusion, 2014 Order, 2014 WL 5844166, at *2; see also Oriental I, 698 F.3d at 18, we address only the first, sixth, and seventh factors. These are, according to one of our sister circuits, the three most important factors in determining the likelihood of confusion. Sorensen v. WD-40 Co., 792 F.3d 712, 726 (7th Cir. 2015) ("No single factor is

witnesses testified at trial that Citigroup uses a family of marks to promote Citifinancial and Citimortgage, while Banco Popular promotes Popular Auto, Popular Mortgage, and Popular Finances.

dispositive, but we have said that three are especially important: the similarity of the marks, the intent of the defendant, and evidence of actual confusion.").

Similarity of the marks in particular can be highly influential when the products bearing those marks "directly compete." Checkpoint Sys., Inc. v. Check Point Software Techs., Inc., 269 F.3d 270, 281 (3d Cir. 2001); see also Barton Beebe, An Empirical Study of the Multifactor Tests for Trademark Infringement, 94 Cal. L. Rev. 1581, 1600, 1603 (2006) (analyzing which factors are most predictive of outcomes on likelihood of confusion in the district courts, and observing that "[t]he similarity of the marks factor is by far the most influential"). Put differently, similarity of the marks is highly salient where, as here, the parties sell similar goods, via similar channels of trade and similar modes of advertising, and compete for similar consumers. See GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1205 (9th Cir. 2000) (referring to "similarity of the marks," "relatedness of the services," and "use of a common marketing channel" as "the controlling troika" of factors in determining the likelihood of confusion in the internet context); see also Attrezzi, LLC v. Maytag Corp., 436 F.3d 32, 39 (1st Cir. 2006) ("[T]he more similar the marks are, the less necessary it is that the products themselves be very similar to create confusion.").

We first address COOP ORIENTAL and COOPERATIVA ORIENTAL. In analyzing the first, sixth, and seventh <u>Pignons</u> factors, and the likelihood of confusion, we make no distinction between those two marks. This approach is consistent with the briefs of the parties and the opinions of the district court. The two marks are indisputably similar to one another, and neither party identifies any relevant difference between them for purposes of comparison with ORIENTAL.

## A. Similarity of the marks

Though we noted in 2012 that the first factor could weigh in favor of Oriental Group, <u>Oriental I</u>, 698 F.3d at 18, the district court determined that it did not, <u>2014 Order</u>, 2014 WL 5844166, at *3. This was the most important factor in the district court's conclusion that COOP ORIENTAL and COOPERATIVA ORIENTAL are non-infringing. Its conclusion that these two marks are dissimilar to ORIENTAL rests upon two premises: that the public in Puerto Rico understands that the terms COOP and COOPERATIVA have a special meaning, and that because of that meaning, these words make a stronger impression than the word ORIENTAL.

### 1. Significance of COOP and COOPERATIVA

The district court explained that the terms COOP and COOPERATIVA create "a recognizable difference with important meaning in Puerto Rico," because Cooperativa "is a cooperative, a

- 18 -

credit union formed under the laws of Puerto Rico," and not "a full-service commercial bank"[14] like Oriental Group. Id. It relied on the assertion, unsupported by evidence, that "[t]he term 'Coop' (or 'Cooperativa') is a common term easily recognizable by the people of Puerto Rico," noting that cooperatives are required, and for-profit entities forbidden, to use designators such as "Coop" in their names. Id. (citing P.R. Laws Ann. tit. 7, § 1363a).[15]

We agree with Oriental Group that these assertions about consumer perception constitute a finding of adjudicative fact by judicial notice, to which Rule of Evidence 201 applies. See Fed. R. Evid. 201 ("Judicial Notice of Adjudicative Facts"); United States v. Bello, 194 F.3d 18, 22 (1st Cir. 1999).[16]

---

[14] The district court did not say why it considered Oriental Group to be "full-service," and Cooperativa not. We note, again, that the district court found that both institutions provide checking and savings accounts, certificates of deposit, IRA accounts, and credit cards. 2010 Order, 750 F. Supp. 2d at 400-01.

[15] The district court correctly notes that Puerto Rico's Cooperative Savings and Credit Associations Act of 2002 requires that a credit union include in its name the words "Savings and Credit Cooperative" ("Cooperativa de Ahorro y Crédito"), or an abbreviation thereof, such as "Coop." P.R. Laws Ann. tit. 7, § 1363a. The Act also provides, with exceptions not relevant here, that no entity other than a cooperative may "use as a name, trade name, mark or designation . . . the term 'cooperative' or 'COOP'." Id. § 1369.

[16] Though Oriental Group does not explicitly argue that this is a matter of adjudicative fact, that is the necessary implication of its argument that the court violated Rule 201. See Fed. R. Evid. 201(a) ("This rule governs judicial notice of an adjudicative fact only, not a legislative fact.").

Public perception of an element of a trademark is typically a matter of adjudicative fact.  See Bello, 194 F.3d at 22 (noting that an adjudicative fact "is a fact germane to what happened in the case," while a legislative fact is "a fact useful in formulating common law policy or interpreting a statute").  Because public perception of a mark is central to any trademark dispute, we are particularly concerned that "Rule 201 [be] applied with some stringency" in finding such facts.  United States v. Hoyts Cinemas Corp., 380 F.3d 558, 570 (1st Cir. 2004).

Rule 201, as applicable here, permits courts to take judicial notice only of facts "not subject to reasonable dispute" because they are "generally known within the trial court's territorial jurisdiction."  Fed. R. Evid. 201(b).  The district court effectively determined that it is indisputable not only that consumers of financial services in Puerto Rico understand that COOP and COOPERATIVA refer to a credit union, but also that they understand that, as a credit union, Cooperativa may not be affiliated with a for-profit bank like Oriental Group.[17]  It is hardly beyond dispute that the public has such a clear understanding of Puerto Rico banking laws.  Indeed, as discussed

---

[17] As Oriental Group rightly points out in its brief, the key issue "is not whether consumers know what type of entit[ies] Cooperativa and Oriental [Group] are.  The issue is whether consumers are likely to believe that Cooperativa or its products or services are somehow affiliated to Oriental [Group]."

below, the only available evidence points in the other direction -- some customers actually believed that Cooperativa was affiliated with Oriental Group.  Oriental I, 698 F.3d at 19.

We have found no other examples of a court using judicial notice to find such facts about the knowledge of the consuming public.  The use of judicial notice in trademark cases is, and should be, limited to more obvious facts about consumer perception. See Dippin' Dots, Inc. v. Frosty Bites Distribution, LLC, 369 F.3d 1197, 1204-05 (11th Cir. 2004) (affirming a finding by judicial notice that the color of ice cream is indicative of its flavor). More often, such conclusions should be supported by record evidence.  See, e.g., Keebler Co. v. Rovira Biscuit Corp., 624 F.2d 366, 375 (1st Cir. 1980) (affirming a finding that "export soda" was generic for a type of soda cracker in Puerto Rico, relying on witness testimony on the historical use of the term); Enrique Bernat F., S.A. v. Guadalajara, Inc., 210 F.3d 439, 443-45 (5th Cir. 2000) (holding that "chupa" is generic for lollipops in Spanish, relying on record evidence of multiple firms using "chupa" in product names for lollipops).[18]

---

[18] We also observe that the finding was made without prior notice to the parties, in violation of Rule 201.  See Fed. R. Evid. 201(e) (requiring notice to parties to allow them "to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed"); Cooperativa de Ahorro y Credito Aguada v. Kidder, Peabody & Co., 993 F.2d 269, 273 (1st Cir. 1993).

## 2. The most salient word

Further, the district court viewed COOP and COOPERATIVA as the most salient words in their respective marks. Because those words have an "important meaning in Puerto Rico," the district court believed, consumers would distinguish COOP ORIENTAL and COOPERATIVA ORIENTAL on the one hand from ORIENTAL on the other. 2014 Order, 2014 WL 5844166, at *3; see 4 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition § 23:42, Westlaw (database updated June 2016) ("It is appropriate in determining the question of likelihood of confusion to give greater weight to the important or 'dominant' parts of a composite mark, for it is that which may make the greatest impression on the ordinary buyer.").

Such a finding cannot be sustained, however, even on deferential review. COOP and COOPERATIVA are "merely [] descriptive term[s]" for a credit union. Oriental I, 698 F.3d at 18; cf. Nw. Airlines, Inc. v. NWA Fed. Credit Union, No. Civ. 03-3625DWFSRN, 2004 WL 1968662, at *7 (D. Minn. Sept. 2, 2004) (identifying "Federal Credit Union" as a generic term). COOP and COOPERATIVA are "of minimal significance" to the similarity analysis "because of [their] highly descriptive nature." Boston Duck Tours, 531 F.3d at 30; accord Peoples Fed. Sav. Bank v. People's United Bank, 672 F.3d 1, 13 (1st Cir. 2012). By contrast, ORIENTAL, in addition to being a strong mark in its own right, is

- 22 -

an inherently distinctive term. "[A] buyer would be more likely to remember and use" ORIENTAL "as indicating [the] origin of the goods," and we therefore conclude that "this is the dominant portion of the mark." McCarthy, supra, § 23:44. There is no question that the common element of the marks -- ORIENTAL -- weighs more heavily in the analysis than COOP or COOPERATIVA.

Where two marks share their most salient word, that fact weighs strongly in favor of similarity. Dorpan, 728 F.3d at 66 ("The marks 'Hotel Meliá' and 'Gran Meliá' are essentially identical for trademark purposes because both marks have the word 'Meliá' as their most salient word."); Beacon Mut., 376 F.3d at 18 (concluding that a reasonable factfinder could conclude that BEACON MUTUAL INSURANCE COMPANY was similar to ONEBEACON INSURANCE GROUP in part because they shared BEACON as their "most salient" word). The "addition of a suggestive or descriptive element" to the dominant word in a mark "is generally not sufficient to avoid confusion." Oriental I, 698 F.3d at 18 (quoting 4 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition § 23:50 (4th ed. 2012)); accord Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1534-35 (4th Cir. 1984) (holding that, because PIZZERIA UNO and TACO UNO share a dominant word, their similarity weighs in favor of a likelihood of confusion).

### 3. Family of marks

As further evidence of salience, the shared word ORIENTAL is the "surname in Oriental's family of marks." Oriental I, 698 F.3d at 18. The family is "a group of marks having a recognizable common characteristic, wherein the marks are composed and used in such a way that the public associates not only the individual marks, but the common characteristic of the family, with the trademark owner." J & J Snack Foods, 932 F.2d at 1462. "[T]he purchasing public recognizes that the common characteristic," the word ORIENTAL, "is indicative of a common origin of the goods." Han Beauty, Inc. v. Alberto-Culver Co., 236 F.3d 1333, 1336 (Fed. Cir. 2001). This public association between ORIENTAL and Oriental Group is further support for the proposition that ORIENTAL is the most salient, and the most source-identifying, element in the marks.

The family of marks concept also supports a finding of similarity in another way. Oriental Group can show similarity of the marks not only by comparing COOP ORIENTAL and COOPERATIVA ORIENTAL with the ORIENTAL mark, but also with the entire family of marks sharing the ORIENTAL root. J & J Snack Foods illustrates the concept. There, the Federal Circuit agreed with McDonald's Corporation that it not only owns particular word marks, e.g., McMUFFIN, McRIB, and McCHICKEN, but also has rights in the larger family of marks sharing the same structure and the "Mc" root.

- 24 -

J & J Snack Foods, 932 F.2d at 1462-63. Hence, even if McDonald's does not sell pretzels and McPRETZEL will not create confusion with any particular "Mc" product, it is infringing if it is likely to be confused for a member of the "Mc" family, and thus perceived as a McDonald's product. Ultimately, because it shared the same structure and "Mc" root as the other family members, McPRETZEL was found to be infringing. Id. at 1464; see also McDonald's Corp. v. McSweet, LLC, 112 U.S.P.Q.2d 1268, 2014 WL 5282256, at *5 (T.T.A.B. 2014) ("If an opposer is found to own a family of marks for a range of goods, that is an additional factor -- beyond the similarities between applicant's marks and goods, and any one of opposer's mark and goods -- weighing in favor of a likelihood of confusion.").

Here, the contested marks clearly share similarities with the ORIENTAL mark. But they share even greater similarities with the family of ORIENTAL marks. Consider the list of marks belonging to the family.[19] Every one includes ORIENTAL as the first word, except for KEOGH ORIENTAL. Most are two-word marks, though several have three words. Most clearly refer to financial services, though some, like ORIENTAL KIDS and ORIENTAL AMIGA, do not. Most are English-language marks. Only one, ORIENTAL AMIGA,

---

[19] As noted in Part II.B, supra, they are: ORIENTAL GROUP, ORIENTAL BANK, ORIENTAL MONEY, ORIENTAL INSURANCE, ORIENTAL MORTGAGES, ORIENTAL ETA, KEOGH ORIENTAL, ORIENTAL SAVINGS PLUS, ORIENTAL MANAGED INVESTMENTS, ORIENTAL FINANCIAL GROUP, ORIENTAL FINANCIAL SERVICES, ORIENTALONLINE.COM, ORIENTAL KIDS, and ORIENTAL AMIGA.

is not.  These facts do not necessarily mean that only the marks with every signal characteristic of the family are members of the family.  ORIENTAL BANK and ORIENTAL MONEY are obviously members, for example, but the trial evidence makes clear that ORIENTAL KIDS, ORIENTAL AMIGA, and KEOGH ORIENTAL were also presented to the public as members of the family.

In that context, consumers are likely to recognize the pattern and conclude that COOP ORIENTAL and COOPERATIVA ORIENTAL -- two-word marks consisting of ORIENTAL and a descriptive term for financial services -- are members of the same family.  They are not a perfect match, given that COOPERATIVA can only be read as a Spanish term.  Further, both marks place the adjective ORIENTAL second, consistent with Spanish grammar.  Nonetheless, the attributes they share with the ORIENTAL family weigh in favor of a finding of similarity.

### 4. Sight, sound, and meaning

Though the district court focused on the meaning of the marks, we also consider the impression they make through sight and sound.  See Boston Duck Tours, 531 F.3d at 24 ("The degree of similarity between two marks . . . is determined by analyzing their sight, sound, and meaning.").  Adding one word to the ORIENTAL mark changes the appearance and sound of the mark somewhat, but not enough to make a decisive difference here.  See Den-Mat Corp. v. Block Drug Co., 895 F.2d 1421, at *1 (Fed. Cir. 1990) (Table)

- 26 -

("There is an obvious visual difference between a two-word and one-word mark, but here the difference is not great enough to overcome the similarities . . . ."). Indeed, though the fact that COOP ORIENTAL and COOPERATIVA ORIENTAL are two-word marks differentiates them from ORIENTAL, it makes them more similar to the two-word marks in the ORIENTAL family.

Beyond the addition of a second word, Cooperativa claims another difference in the sound of the marks -- that the ORIENTAL mark is pronounced in English, while COOPERATIVA ORIENTAL and COOP ORIENTAL are pronounced in Spanish. While the ORIENTAL element of the marks looks the same, it argues, it sounds different in the context of COOP or COOPERATIVA. The argument is consistent with testimony from an Oriental Group marketing executive that ORIENTAL is pronounced in English and COOP ORIENTAL in Spanish. Similarly, "Cooperativa" is not an English word, and consumers are likely to use a Spanish pronunciation of COOPERATIVA ORIENTAL. The differences in pronunciation are limited, however -- while English and Spanish pronunciations of "oriental" differ in the placement of emphasis and pronunciation of the final vowel, they are otherwise essentially the same. We conclude that this possible difference in sound does not outweigh the strong similarities between these marks.

### 5. Conclusion on similarity

The conclusion is inescapable that ORIENTAL, COOP ORIENTAL, and COOPERATIVA ORIENTAL are similar. The first Pignons factor weighs in favor of Oriental Group. We are left with the firm conviction that the district court erred in finding to the contrary.

## B. Evidence of actual confusion

The district court found that the lack of evidence of actual confusion "weighs strongly in favor" of Cooperativa. 2014 Order, 2014 WL 5844166, at *4. In the district court's view, "[t]he evidence before the court demonstrated a confusion between the Defendant's 2009 trade dress and the Plaintiffs' trade dress because of their shared color schemes and word placement emphasis. Plaintiffs presented no evidence of actual confusion prior to the Defendant's introduction of the 2009 trade dress despite Defendant's use of 'Coop Oriental' for nearly fifteen years." Id. Because Oriental Group offered evidence only of incidents taking place in 2010, the district court was "convinced that absent the infringing use of the 2009 trade dress, the instances of actual confusion post-2009 would likely not have occurred." Id.

"Evidence of actual confusion is not invariably necessary to prove likelihood of confusion; on the other hand, absent evidence of actual confusion, when the marks have been in the same market, side by side, for a substantial period of time,

- 28 -

there is a strong presumption that there is little likelihood of confusion."  Pignons, 657 F.2d at 490 (internal quotation marks omitted).  We have said that a lack of evidence of actual confusion weighs against a finding of likely confusion when competing marks have competed in the same market for six years, Aktiebolaget Electrolux v. Armatron Int'l, Inc., 999 F.2d 1, 4 (1st Cir. 1993), four years, Pignons, 657 F.2d at 490, or as little as three and a half years, Keebler, 624 F.2d at 377.  With these precedents in mind, the district court concluded that because roughly 15 years passed between Cooperativa's adoption of the COOP ORIENTAL word mark in 1995 and the incidents of actual confusion evidenced at trial, the absence of evidence suggested a lack of actual -- or likely -- confusion.  2014 Order, 2014 WL 5844166, at *4.

This analysis misses two essential considerations.  First, the district court did not address the nature of the post-2009 incidents evidenced at trial.  They indicated that, around the same time Cooperativa increased its advertising and began competing with Oriental Group in San Juan and other areas, existing customers of both institutions became confused and believed the two were affiliated.  In several instances, this confusion was apparently driven by the word marks alone.  As we summarized the trial testimony in Oriental I:

> A supervisor at one of Oriental's branches testified that several customers had attempted to

- 29 -

cash checks bearing the name COOPERATIVA ORIENTAL at the Oriental branch, apparently associating that name with Oriental's business. The supervisor also testified that customers with Cooperativa accounts had attempted to withdraw or deposit money at the Oriental branch. A customer relations officer at a different Oriental branch also testified that customers had called an Oriental branch attempting to verify their accounts, which were actually held by Cooperativa. These customers, according to the employee's testimony, relied on the similarity of Oriental's marks and the COOP ORIENTAL mark in assuming that Cooperativa was a subsidiary of Oriental. Oriental also presented several other examples of actual consumer confusion, including telephone calls by Cooperativa customers to Oriental branches and inquiries by Oriental customers about branches that actually were a part of Cooperativa. Each of these instances of actual confusion appeared to be attributable to the use of the name COOP ORIENTAL without the logo.

698 F.3d at 19 (emphasis added). The district court concluded too quickly that these incidents, because they took place after the adoption of Cooperativa's new logo and trade dress, were caused by the new logo and trade dress.

Second, the district court treated 1995 to roughly 2010 as the relevant time frame, without analyzing whether, during that time, the marks were actually "in the same market, side by side." Pignons, 657 F.2d at 490. Yet for the great majority of that time, the marks did not co-exist in any geographic market outside of Humacao in eastern Puerto Rico. There is no dispute that, for years after adopting the COOP ORIENTAL mark, Cooperativa did not compete with Oriental Group beyond operating a small number of

branches in that relatively small municipality.[20]  Oriental I, 698 F.3d at 22 ("Cooperativa operated only three branches in the mid to late 1990s, and these branches were located almost exclusively within Humacao.  At that time, Cooperativa had no presence in San Juan. . . .  It was not until 2008 that Cooperativa began to expand its business into San Juan, acquiring three San Juan branches by 2010.").  Further, Cooperativa's minimal advertising until roughly 2009 suggests that its COOP ORIENTAL mark appeared alongside Oriental Group's marks little, if at all.  See id. at 22-24.

Hence, the absence of evidence of confusion before 2010 tells us little, given the relative obscurity of COOP ORIENTAL and COOPERATIVA ORIENTAL at the time.  We conclude that the district court clearly erred and that, given the trial evidence of actual confusion apparently attributable to the word mark alone in the 2009 to 2010 timeframe, id. at 19, the sixth Pignons factor weighs in favor of Oriental Group.

**C. Defendant's intent**

Though the district court found that Cooperativa "knew of and intended to benefit from [Oriental Group's] considerable advertising efforts" when it adopted its orange trade dress and logo, 2010 Injunction Order, 750 F. Supp. 2d at 403, the same

---

[20] The U.S. Census Bureau estimates the population of Humacao at about 55,000.  U.S. Census Bureau, U.S. Dep't of Commerce, Annual Estimates of the Resident Population: April 1, 2010 to July 1, 2015 (2015).

inference does not necessarily apply with respect to the word marks alone. Cooperativa adopted service marks that are shortened versions of its longstanding legal name. Common sense suggests that the pithy COOP ORIENTAL makes for a better trade name than "Cooperativa de Ahorro y Crédito Oriental" even absent any similarity to Oriental Group's marks. Moreover, Cooperativa adopted the mark in the 1990s, long before it entered into more direct competition with Oriental Group. In Oriental I, we said that an inference of bad faith "might . . . be drawn" based on "Cooperativa's use of the COOP ORIENTAL mark standing alone." 698 F.3d at 19 (emphasis added). Since that time, however, no new evidence has been presented, and the district court has come to the opposite conclusion. See 2014 Order, 2014 WL 5844166, at *5. The district court did not clearly err in finding that the seventh Pignons factor weighs in Cooperativa's favor.

**D. Conclusion on likelihood of confusion**

The Pignons factors are not a "mechanical formula." Attrezzi, 436 F.3d at 39. Oriental Group does not prevail simply because seven of the eight factors weigh in its favor. It will surely be the rare case, however, where the Pignons analysis is so lopsided and yet no likelihood of confusion is found. This is not that rare case. Oriental Group and Cooperativa offer similar services to similar customers through similar channels of trade and advertise in similar media. Cooperativa identifies its

- 32 -

services with a word mark similar to a strong mark belonging to Oriental Group.  Indeed, the marks share their most salient word, and the only difference between them is the addition of the generic term COOP or COOPERATIVA.  Cooperativa's marks also share traits in common with Oriental Group's family of marks.  It is not surprising that these marks have caused confusion in the past. Under these circumstances, consumer confusion is also likely in the future.  We are left with the firm conviction that the district court erred in finding no such likelihood.  We hold that COOP ORIENTAL and COOPERATIVA ORIENTAL infringe Oriental Group's rights in the ORIENTAL mark.

## IV.

Oriental Group also claims that the district court erred in finding that ORIENTAL POP and CLUB DE ORIENTALITO were non-infringing.[21]  This infringement claim differs from the COOP ORIENTAL and COOPERATIVA ORIENTAL claims.  ORIENTAL POP and CLUB DE ORIENTALITO are product marks designating particular financial services, while COOP ORIENTAL and COOPERATIVA ORIENTAL are house marks referring to the institution providing those services.[22]

---

[21] We limit our review to ORIENTAL POP and CLUB DE ORIENTALITO, the specific marks disputed in Oriental Group's opening brief and Cooperativa's brief.  Though Cooperativa's use of CUENTA ORIENTALITO is documented in the record, Oriental Group did not complain about the CUENTA ORIENTALITO mark until its reply brief before this court.

[22] A "house mark" is a mark that appears in conjunction with different "product marks," indicating that the products originate

There are no storefronts emblazoned with ORIENTAL POP or CLUB DE ORIENTALITO –- they are the names of savings accounts intended for children and teens, respectively.

These marks were also considered at a different point in time than the others: at the post-trial final disposition hearing after the 2010 injunction had gone into effect. Oriental Group argued that Cooperativa's website violated the injunction insofar as it referenced ORIENTAL POP and what was then CLUB ORIENTALITO. The district court viewed the live website during the hearing and found the use of those marks non-infringing, noting that the top of the webpage included the full name Cooperativa Ahorro y Crédito Oriental, and a subheading, "Ahorros" (literally, "Savings"), which indicated that ORIENTAL POP and CLUB ORIENTALITO were types of savings accounts. The website images as they appeared at the hearing also clearly showed a distinctive logo reminiscent of interlocking hands, and a green color scheme distinct from the infringing orange trade dress Cooperativa had used earlier.

The district court revisited ORIENTAL POP and CLUB DE ORIENTALITO (by then changed from CLUB ORIENTALITO) following remand after Oriental I, beginning with the Pignons factors. 2014 Order, 2014 WL 5844166, at *5-6. Just as with COOP ORIENTAL and

_____

from the same "house" or company. McCarthy, supra, § 23:43. Examples include INTEL PENTIUM, FORD MUSTANG, and KELLOGG'S FROOT LOOPS. Bose Corp. v. QSC Audio Prods., Inc., 293 F.3d 1367, 1374 (Fed. Cir. 2002).

COOPERATIVA ORIENTAL, it considered only the first, sixth, and seventh factors, and did not make findings as to the second, third, fourth, fifth, and eighth. Instead, it applied the same findings on those factors it had originally made with regard to Cooperativa's orange logo and trade dress. See 2010 Injunction Order, 750 F. Supp. 2d at 403-04. Neither party objected to that approach. Hence, for purposes of this appeal, we assume that all five of those factors favor Oriental Group.[23]

The district court again concluded that, even though most of the factors weighed in favor of Oriental Group, there was no likelihood of confusion, and thus no infringement, with respect to either ORIENTAL POP or CLUB DE ORIENTALITO. The court in effect adopted its earlier conclusion that the use of these marks in the context of Cooperativa's website eliminated any risk of confusion. In reviewing the court's determination, we begin with the Pignons factors it addressed.

**A. Similarity of the marks**

As the district court recognized, the way the marks appeared on Cooperativa's public website is central to the

---

[23] In Oriental I, we said that the findings on these five factors also applied to the COOP ORIENTAL mark and by implication the COOPERATIVA ORIENTAL mark, but did not explicitly address their application to ORIENTAL POP and CLUB DE ORIENTALITO. 698 F.3d at 18. We express no view on whether these findings will need to be reassessed if Oriental Group pursues additional remedies against CUENTA ORIENTALITO or other contested marks on remand.

- 35 -

infringement analysis.[24]  More particularly, context governs the similarity analysis.  "[I]n determining the similarity of marks in an infringement action, a court must examine the visual appearance of each mark in the context of its use."  Jim Beam Brands Co. v. Beamish & Crawford Ltd., 937 F.2d 729, 735 (2d Cir. 1991).  In Pignons, for example, the plaintiff's and defendant's allegedly similar product marks were ALPA and ALPHA respectively, which "[i]n spelling and pronunciation, . . . differ[ed] . . . only by virtue of the letter 'h'."  657 F.2d at 487.  But defendant Polaroid's product mark "always appear[ed] in close proximity with an equally prominent and uniquely identifying designation, such as 'Polaroid SX-70 Land Camera Alpha 1[.]'"  Id.  Further, Polaroid packaged its cameras in white, black or silver with a trademarked geometric design, while plaintiff Pignons packaged its cameras in red and white boxes bearing the word "Swiss" or "Switzerland," a white cross on a red background, and a logo of a mountain.  Id.  In that context, we observed that "otherwise similar marks are not likely

---

[24] However, although the district court relied on context in its ultimate conclusion on infringement, it incorrectly failed to consider context in addressing the first Pignons factor.  It found that both marks are similar to ORIENTAL because "the terms 'Club de Orientalito' and 'Oriental POP,' standing alone, could easily be confused as a product of Oriental."  2014 Order, 2014 WL 5844166, at *5 (emphasis added).  As explained infra, rather than considering context only as part of the overall likelihood-of-confusion assessment, the court should have looked at how the marks appeared to consumers when addressing the similarity factor.  See Pignons, 657 F.2d at 487.

to be confused" where they are consistently "used in conjunction with the clearly displayed name and/or logo of the manufacturer." Id.; see also Astra Pharm. Prods., Inc. v. Beckman Instruments, Inc., 718 F.2d 1201, 1205 (1st Cir. 1983).

To a significant extent, the graphic arrangement of Cooperativa's website, with the credit union's full name used as a house mark, the interlocking hands logo, and the green color scheme, serves the same function as Polaroid's use of its house mark, logo, and distinctive packaging. With respect to ORIENTAL POP, however, that context is not enough to distance the mark from Oriental Group and the ORIENTAL family of marks such that the similarity factor would weigh in favor of Cooperativa. Of particular importance is that ORIENTAL POP -- a two-word mark with ORIENTAL as the first word -- closely fits the pattern of the ORIENTAL family of marks. Marks such as ORIENTAL AMIGA and ORIENTAL KIDS closely resemble ORIENTAL POP in their structure and use of the ORIENTAL root. See J & J Snack Foods, 932 F.2d at 1463-64.

Further, the association between ORIENTAL POP and Oriental Group's family of marks remains strong even in the context of the website. ORIENTAL POP appeared on the website in large, bolded text, and plainly identified a financial product. When ORIENTAL is used in this way -- as the first word of a two-word mark that represents a financial product -- it inevitably evokes

- 37 -

an association with Oriental Group's family of financial products. The fact that ORIENTAL POP appears in conjunction with the name and trade dress of a lesser-known financial institution is not enough to dispel the similarity with the strong ORIENTAL mark and its family.

With respect to CLUB DE ORIENTALITO, however, that context serves to further distance the mark from Oriental Group's family of marks. Unlike ORIENTAL POP, CLUB DE ORIENTALITO departs from the ORIENTAL family's readily identifiable format of an English-language mark containing a generic term for financial services alongside the word ORIENTAL. Indeed, none of Oriental Group's marks uses a variant like ORIENTALITO and, hence, a consumer viewing the CLUB DE ORIENTALITO mark is less likely to infer a link between it and the ORIENTAL family. In addition to the different appearance and sound, ORIENTALITO has a somewhat different meaning from ORIENTAL. "[T]he Spanish diminutive suffix 'ito' . . . is typically used to indicate smaller size. . . . [A]dding the ending -ito to [a] word implies small size or cuteness." In re Allen Batres Miranda, No. 77135681, 2009 WL 625571, at *1-2 (T.T.A.B. Feb. 11, 2009). The association between CLUB DE ORIENTALITO and Oriental Group is thus considerably more attenuated than for the other challenged marks we have examined. The website context, featuring a prominent display of Cooperativa's full name, logo and trade dress, reinforces the

- 38 -

distinction between this mark and Oriental Group.  Hence, at least when used in this way, the differences from the ORIENTAL family are enough to assign the similarity factor to Cooperativa for CLUB DE ORIENTALITO.

## B. Actual confusion

The district court reasoned that because Oriental Group had shown no evidence of actual confusion caused by ORIENTAL POP or CLUB DE ORIENTALITO, the sixth Pignons factor weighed in favor of Cooperativa.  2014 Order, 2014 WL 5844166, at *6.  We assume arguendo that no relevant evidence was shown.[25]  But, as discussed above, lack of evidence of actual confusion does not weigh in Cooperativa's favor unless Cooperativa's mark existed "in the same market, side by side, for a substantial period of time" with ORIENTAL.  Pignons, 657 F.2d at 490.  Here, available evidence suggests that ORIENTAL POP and CLUB DE ORIENTALITO were not used outside Humacao before Cooperativa's geographic expansion in 2008-2010, and that they enjoyed far less advertising and public exposure than COOP ORIENTAL and COOPERATIVA ORIENTAL did.  A lack

---

[25] Given that Oriental Group first complained about ORIENTAL POP and CLUB DE ORIENTALITO after trial, there was little trial evidence specifically addressed to those marks.  In the district court's words, "there [was] only a single time during the trial when Plaintiffs mention[ed] 'Club de Orientalito' and 'Oriental POP,' and that was during the testimony of its head of advertising. The individual speculated that a consumer could get confused by the Defendant's use of the terms."  2014 Order, 2014 WL 5844166, at *6.

of actual confusion means little unless the purportedly confusing marks are shown to the public over a sufficient period of time. Because that is not the case here, we conclude that the district court clearly erred, and that the sixth Pignons factor is neutral.[26]

## C. Defendant's intent

The district court also found that the seventh factor, Cooperativa's intent in adopting the marks, favored Cooperativa. We agree with the district court that the absence of evidence as to Cooperativa's intent requires this result. 2014 Order, 2014 WL 5844166, at *6.

## D. Conclusion on likelihood of confusion

Ultimately, the district court found that six of the Pignons factors favored Oriental Group and two favored Cooperativa, but that, nonetheless, ORIENTAL POP and CLUB DE ORIENTALITO created no likelihood of confusion.

---

[26] The district court's suggestion that Peoples is to the contrary is misplaced. See 2014 Order, 2014 WL 5844166, at *6 (citing Peoples, 672 F.3d at 10-11). The facts of Peoples are analogous insofar as there was at best limited evidence of actual confusion, and the plaintiff's and defendant's marks had only been side by side in the market for a short time. But in Peoples, rather than find that the lack of evidence indicated that the sixth Pignons factor favored the defendant, we affirmed the district court's conclusion that "the scarcity of such evidence [was] not in itself dispositive of plaintiff's claim." Peoples, 672 F.3d at 11 (quoting Peoples Fed. Sav. Bank v. People's United Bank, 750 F. Supp. 2d 217, 226 (D. Mass. 2010)). In essence, in Peoples as here, we said that where there is no evidence of actual confusion but the marks have only been in the same market for a brief time, the sixth factor is neutral.

We affirm the district court's conclusion on CLUB DE ORIENTALITO. For that mark, five Pignons factors favor Oriental Group, two favor Cooperativa, and one is neutral. In this case, the lack of similarity between the marks makes the difference. The word mark is sufficiently distinct from ORIENTAL and its family of marks that, at least when used in conjunction with a prominent display of Cooperativa's distinctive house mark and trade dress, we find no clear error in the district court's conclusion that it is unlikely to cause consumer confusion. It is Oriental Group's burden to show a likelihood of confusion. On this record, that burden has not been met.

However, we find clear error in the district court's conclusion as to ORIENTAL POP. The Pignons analysis is even more lopsided than the district court's analysis suggested: six factors favor Oriental Group, with one for Cooperativa and one neutral. But the numbers alone do not tell the story -- here again, similarity of the marks is the pivotal factor. Cooperativa competes with Oriental Group to sign up similar customers for similar bank accounts using similar modes of advertising in the same geographic areas of Puerto Rico. In that competition, it employs the product name ORIENTAL POP, a mark that naturally fits into the ORIENTAL family of marks, and will likely be associated with Oriental Group's family of financial products. Because of its similarity to ORIENTAL and its family, consumers are likely to

mistake ORIENTAL POP for a species within the same genus as ORIENTAL MONEY, ORIENTAL KIDS, and ORIENTAL AMIGA. As a result, consumers are likely to believe that ORIENTAL POP is somehow affiliated with Oriental Group. The likelihood of such confusion requires a finding that ORIENTAL POP infringes on the ORIENTAL mark.

**V.**

The district clearly erred in finding that COOP ORIENTAL, COOPERATIVA ORIENTAL, and ORIENTAL POP create no likelihood of confusion with the ORIENTAL mark. To the contrary, we hold that those marks infringe upon Oriental Group's trademark rights. Accordingly, we vacate the district court's judgment as it applies to those marks and remand for reconsideration of whether to expand the scope of the injunction to address the use of those marks. We affirm the portion of the judgment addressing CLUB DE ORIENTALITO.

Injunctive relief does not flow automatically from a finding of trademark infringement. See eBay, 547 U.S. at 391; Voice of the Arab World, 645 F.3d at 32-35. The decision to grant or deny expanded injunctive relief rests in the discretion of the district court, to be exercised consistent with "well-established principles of equity." eBay, 547 U.S. at 391. On remand, the district court must reassess equitable factors such as the nature of the harm flowing from the infringement, the availability of

alternative remedies, and any hardship an injunction might cause to Cooperativa or to the public.  See id.  It must do so in light of present circumstances -- several years have passed since new evidence was presented on this matter -- and the understanding that it is now the law of the case that the COOP ORIENTAL, COOPERATIVA ORIENTAL, and ORIENTAL POP marks do infringe on Oriental Group's rights in the ORIENTAL mark.

The judgment below is affirmed-in-part, reversed-in-part, and remanded.  The parties are responsible for their own costs.


So ordered.